# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELINDA A. LOELLKE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 16-cv-00799-JPG-CJP |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant.[1] | ) ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Elinda A. Loellke, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed for DIB and SSI on August 6, 2012, alleging a disability onset date of May 12, 2012. Administrative Law Judge (ALJ) Thomas J. Sanzi presided over an evidentiary hearing on January 13, 2014 and issued an unfavorable decision in an opinion dated January 30, 2014. (Tr. 30–40.) Plaintiff appealed the decision to the Appeals Council, which denied review, and the decision of the ALJ became the final agency decision. (Tr. 15–18, 21–23.) Plaintiff exhausted her administrative remedies and filed a timely complaint in this Court.

## Issues Raised by Plaintiff

Plaintiff makes the following arguments:

1. The ALJ erred in finding plaintiff not disabled because the ALJ relied on vocational expert opinions that did not have a reliable basis.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1

2. The ALJ erred in finding that plaintiff was not disabled because the ALS did not present plaintiff's residual functional capacity (RFC) limitations to the vocational expert as a hypothetical question.

**<u>Applicable Legal Standards</u>**

To qualify for Disability Insurance Benefits or Supplemental Security Income, a claimant must be disabled within the meaning of the relevant statutes and regulations.[2] "Disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2

> ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568–69 (7th Cir. 2011).

Rephrased, the Court must ask the five following questions: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer to steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported

by substantial evidence and that there are no mistakes of law. This scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## The Decision of the ALJ

ALJ Sanzi held that plaintiff was not disabled because, even though she was unable to perform past relevant work, she was capable of performing other jobs that existed in the national economy. (Tr. 30–40.) Specifically, ALJ Sanzi followed the five-step framework set forth above. He found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and had not been engaged in substantial gainful activity since May 12, 2012. Plaintiff had severe impairments of degenerative disc disease (DDD), affective disorder, and anxiety disorder. ALJ Sanzi opined that plaintiff had the residual functional capacity to perform sedentary work, except that she could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; could occasionally stoop, crouch, kneel, and crawl; could frequently balance; and could occasionally perform bilateral pushing, pulling, and foot control operations. Plaintiff also was limited to simple, routine, and repetitive tasks; was limited to work that allowed her to be off task up to ten percent of the day in addition to regularly scheduled breaks; and could occasionally interact with the public and coworkers.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. In light of the issues raised, a review of the medical records is not required.

1. **Agency Forms**

Plaintiff was born on June 11, 1964 and was forty-seven years old on the alleged onset date. (Tr. 311.) Plaintiff indicated that problems with her back and right leg, depression, and fibromyalgia limited her ability to work. She was taking Ambien and Trazadone as sleep aids; Amitriptyline for sweating; Diclofenac and Hydrocodone for back and leg problems; Flovent, Proair, and an inhaler for asthma; Fluconazole for allergies; Hydroxyzine and Xanax for anxiety; Lisinopril/HCTV for blood pressure; Norflex and Relafen for back problems; and Neurontin and Savella for fibromyalgia. (Tr. 316, 319.) Plaintiff completed two years of college and previously worked as a cashier/delivery person for a fast food restaurant, in a deli at a department store, in home health aide, and in insurance sales. (Tr. 317.)

2. **Evidentiary Hearing**

ALJ Sanzi presided over an evidentiary hearing on January 13, 2014, at which plaintiff was unrepresented. (Tr. 45–104.) A vocational expert testified at the hearing and stated that he had his master's degree in rehabilitation counseling. He also testified that he was a certified rehabilitation counselor and clinical profession counselor. The vocational expert worked for seventeen years in the vocational rehabilitation field and has served as an expert witness in Social Security, personal injury, and workers' compensation claims for the previous fifteen years. (Tr. 86.) Plaintiff declined to object to the ALJ recognizing the vocational expert as an expert witness. (Tr. 87.) The vocational expert stated he was familiar with the Social Security

Administration's regulatory definitions and that he was familiar with the jobs that existed in the regional and national economy. He also prepared a vocational consultant case analysis in preparation for his testimony. (Tr. 87–88.)

The ALJ then asked the vocational expert to consider a hypothetical individual who was able to perform sedentary work with plaintiff's age, education, and work experience. This hypothetical person could occasionally climb ladders, ropes, scaffolds, ramps, or stairs; frequently balance; occasionally stoop, crouch, kneel, and crawl; and was limited to simple, routine, and repetitive tasks. Additionally, the ALJ instructed that the person "is allowed to be off task up to 10 percent of the day in addition to regularly scheduled breaks." The hypothetical individual could occasionally interact with the public and coworkers. (Tr. 90–91.) The vocational expert stated that a hypothetical person with those limitations would not be able to perform plaintiff's previous work because it required more than simple, routine tasks, and was above the sedentary physical demand. (Tr. 91.)

The ALJ then asked the vocational expert to consider the same hypothetical individual, but with the additional capabilities of occasional bilateral pushing and pulling and occasional bilateral foot control operation. (Tr. 91.) This hypothetical person could not perform plaintiff's previous work, but there were jobs in the national and regional economy that such an individual could perform. (Tr. 91.)

The vocational expert responded that the Department of Labor publishes the Dictionary of Occupational Titles (hereinafter Dictionary), which identifies 12,000 occupations and categorizes them as unskilled, semiskilled, or skilled. The Dictionary also includes physical demands for each job. The vocational expert explained that the ALJ's hypotheticals would be considered sedentary, unskilled jobs. Sedentary work is work that requires six hours of sitting in

6

an eight-hour work day, standing two hours in an eight-hour day, and lifting no more than ten pounds.

The ALJ further asked the vocational expert to consider the limitations of the hypothetical person being off task for up to ten percent of the day. The Dictionary does not discuss being off task, so the vocational expert utilized his experience in formulating his response and claimed that the ten percent would not have an impact on any occupation. (Tr. 92.) The Dictionary also does not discuss the frequency of interactions with the public, coworkers, or supervisors, so part of the vocational expert's response in relation to those limitations was also based on prior experience. (Tr. 93.) Moreover, the terms "occasional", "frequent", and "constant" are not used in the Dictionary. (Tr. 94–95.)

The vocational expert opined that positions of a circuit board tester, an eyeglass assembler, and a sorter would be acceptable for the first and second hypotheticals posed. (Tr. 95.) The vocational expert stated that a person who was only able to engage in sustained work activity on a regular and continuing basis for four hours a day would be precluded from maintaining full-time, competitive employment at all exertional levels. (Tr. 95–96.)

A person who would be absent two or more days per month on a regular and continuing basis would also be precluded from competitive work at all exertional levels. The vocational expert stated that absenteeism is not defined in the Dictionary, so his response was based on his experience that employers generally permitted just one absence per month, for a total of ten to twelve per year. The number varies because some employers have a probationary period, during which they will not tolerate any absenteeism. (Tr. 95–96.)

Finally, the vocational expert testified that a person who was off task more than fifteen percent of the workday, in addition to regularly scheduled breaks, could not maintain

7

competitive work at any exertional level. Again, the vocational expert explained that being off task was not defined in the Dictionary, but his response was "based on experience as well as research done by the U.S. Department of Labor." Generally, employers permit someone to be off task no more than fifteen percent of the workday. (Tr. 96.)

Plaintiff then expressed confusion about the purpose of the vocational expert's testimony. When asked if she had any questions for the ALJ, plaintiff responded, "I'm not understanding what you're wanting me to say." (Tr. 97.) The ALJ explained that he posed hypothetical questions to the vocational expert, who then returned jobs that conformed to those limitations. (Tr. 97–98.) Plaintiff responded, "If I was—so he's saying that there's jobs I could do with my disability, is that what you're trying to tell me?" (Tr. 98.) The ALJ tried again to explain, to which plaintiff responded, "Okay. I'm really confused. I don't really understand. I mean, I listened to you guys talk and the questions that were asked, but a lot of it went right over my head, but—so I guess I have no questions for him." (Tr. 99.) The ALJ articulated the purpose of the hypotheticals in other terms and asked plaintiff if she understood. Plaintiff responded, "In a roundabout way, yeah, but then I'm still a little confused, but I see where you're getting to – what you're getting too [sic]." Plaintiff stated she had no questions for the vocational expert. (Tr. 100.) In respect to her disabilities, Plaintiff testified that she was not prescribed a cane, but she uses one for balance. She needed a cane for going up and down stairs, getting in and out of bed, and using the toilet. She also used furniture to help her get around. (Tr. 102–03.)

Finally, the ALJ asked the vocational expert to consider a person with the limitations included in the second hypothetical who was also required to use a handheld assistive device for uneven terrain or prolonged ambulation. The vocational expert opined that those limitations would not affect any of the sedentary jobs. (Tr. 103–04.)

## Analysis

Pursuant to SSR-004p, an ALJ has an affirmative duty to ask the vocational expert whether there are any conflicts between his testimony and the information in the Dictionary. "[I]f a vocational expert's testimony appears to *conflict* with the Dictionary, the ALJ must obtain a reasonable explanation for the apparent conflict, and the claimant's failure to object during a hearing cannot excuse an ALJ's failure to do so. *Brown v. Colvin*, 845 F.3d 247, 254–55 (7th Cir. 2016) (internal quotations omitted).

Here, the vocational expert testified that certain jobs permitted an individual to be off task up to ten percent of the day—information not addressed in the Dictionary. (Tr. 91–92.) The Seventh Circuit has not defined whether this constitutes a conflict, but SSR-004p suggests that it does. Under the section entitled "Reasonable Explanations for Conflict (or Apparent Conflicts) in Occupational Information," the agency gives examples of reasonable explanations for conflicts. The first example provides, "[e]vidence from [vocational experts] can include information not listed in the Dictionary." SSR-004p, 2000 WL 1898704, at *2–3. Thus, it appears that the agency's own interpretation is that there is a conflict between the vocational expert's testimony and the Dictionary where the vocational expert testifies about information that is not contained in the Dictionary. Moreover, the conflict was apparent as the vocational expert explicitly testified that the Dictionary did not address off task requirements.

The Commissioner cites *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) in support of her argument that no conflict exists: "[t]he [Seventh Circuit] noted that the vocational expert's testimony about the effects on job availability of an off-task limitation 'supplemented (and did not conflict with) the Dictionary of Occupational Titles (DOT).'" (Doc. 21, p. 6.) This quote, however, is taken out of context. In *Brown*, the Seventh Circuit held that the claimant forfeited

an argument regarding the reliability of a vocational expert's testimony when she "conceded that this testimony merely supplemented (and did not conflict with) the Dictionary of Occupational Titles (DOT), which means that she forfeited these arguments by failing to object to the testimony during the administrative hearing." *Brown* is inapplicable here because plaintiff did not concede that the vocational expert's testimony merely supplemented the Dictionary.

The unresolved conflict between the off task requirements and the Dictionary warrants remand on this point alone. Moreover, even if no conflict exists, the ALJ's failure to develop a fair and full record at the hearing (discussed below) was also reversible error.

Vocational expert testimony must be reliable. "A finding based on unreliable vocational expert testimony is equivalent to a finding that is not supported by substantial evidence." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). As noted above, at step five of the sequential analysis, if the claimant is not able to perform her prior work, the Commissioner bears the burden of showing that she is capable of performing other work that exists in significant numbers in the economy.

Here, the ALJ found that plaintiff was unable to perform past work and continued to step five. (Tr. 39.) The ALJ then determined that plaintiff could perform other jobs that existed in the national economy. The step five determination, however, was not supported by the evidence because the vocational expert's testimony did not have a reliable basis.

The vocational expert explained that the Dictionary does not address how long employees may be "off task." He stated, "For that part, my response is based on experience." (Tr. 91–92.)[3] Later, the vocational expert testified, "Again, being on or off task isn't defined in the Dictionary, but my response is based on experience as well as research done by the U.S. Department of

---

[3] The ALJ had an affirmative duty under SSR-004p to ask the vocational expert whether his testimony conflicted with the Dictionary. Notably, the ALJ did not meet his duty. However, the vocational expert volunteered this information.

Labor." (Tr. 96.) Pursuant to Seventh Circuit precedent, these bases are vague and perfunctory. *See McKinnie v. Barnhart,* 368 F.3d 907, 911 (7th Cir. 2004).

The Commissioner asserts that plaintiff waived any objection to the bases of the vocational expert's testimony when she did not raise the matter at the hearing, citing *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002). There, the court held that "when no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [Dictionary's]." The Commissioner argues that "[n]o subsequent case has overruled *Donohue* and Seventh Circuit rules require the Court to do so explicitly." (Doc. 21, p. 6.) In particular, the Commissioner cites to Seventh Circuit Rule 40(e), which addresses proposed opinions that would overrule a prior decision or create a conflict with another circuit.

The Commissioner's argument is not convincing. As a preliminary matter, requiring an ALJ to inquire into the basis of vocational expert testimony as part of his or her duty to develop the record is separate from a plaintiff's duty to preserve issues for appeal. In *Donahue*, there was no issue with the development of the record. Thus, permitting plaintiff to raise the argument now does not conflict with *Donahue* and Circuit Rule 40(e) is inapplicable. Moreover, it is well established that Social Security hearings are not adversarial proceedings, 20 C.F.R. §404.900(b); *see also Richardson v. Perales*, 91 S. Ct. 1420, 1428 (1971). Accordingly, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Where, as here, the claimant is unrepresented, the ALJ's duty is "enhanced" such that the ALJ is required to "'scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.'" *Id.* (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir.1991)).

Here, plaintiff demonstrated a patent lack of understanding as to the purpose of the vocational expert's testimony. When the ALJ asked plaintiff if she wanted to ask the vocational expert any questions, plaintiff responded, "I'm not understanding what you're wanting me to say." (Tr. 97.) After attempting to explain the vocational expert testimony, plaintiff stated, "Okay. I'm really confused. I don't really understand. I mean, I listened to you guys talk and the questions that were asked, but a lot of it went right over my head, but—so I guess I have no questions for him." (Tr. 99.) The ALJ then attempted to explain the purpose of the vocational expert's testimony, once again, and asked plaintiff if she understood. Plaintiff responded, "In a roundabout way, yeah, but then I'm still a little confused, but I see where you're getting to— what you're getting too [sic]." (Tr. 100.)

It is readily apparent that plaintiff was unable to develop the record by cross-examining the vocational expert. As stated by the Tenth Circuit, "[C]ross-examining a vocational expert with a publication such as the Dictionary of Occupational Titles is clearly a matter for someone well versed in social security law, not a layman." *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999.) The ALJ's duty to fully and fairly develop the record included an obligation to elicit testimony regarding the bases of the vocational expert's opinions when it was apparent that plaintiff was not equipped to do so. Accordingly, plaintiff's failure to raise an objection at the hearing is immaterial. This error is only reversible, however, if the omission from the record was significant. *Nelms*, 553 F.3d at 1098. An omission is significant if it is prejudicial to the claimant. *Id.*

Here, the ALJ's failure to fully and fairly develop the record was prejudicial to plaintiff because the ALJ's disability determination rested on the analysis at step five of the framework. The Commissioner bears the burden at step five to determine whether there are jobs in the

economy that plaintiff can perform. As with every other sequential step, the ALJ must build a logical bridge between the evidence and his conclusions. Because it is impossible to tell whether the vocational expert's testimony rested on a reliable basis, the ALJ did not construct the logical bridge in relying on those opinions. This step was a critical component of plaintiff's claim and, because the record was insufficient to make a determination, remand is required.

Because remand is warranted on this point, plaintiff's argument regarding the hypothetical posed to the vocational expert will not be addressed. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## **Conclusion**

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: August 23, 2017**

*s/J. Phil Gilbert*
United States District Judge
